**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                       :
WILLIAM SEYMOUR JONES,                 :
                                       :  Civil Action No. 03-3947 (GEB)
              Plaintiff,               :
                                       :
       v.                              :          **O P I N I O N**
                                       :
DR. GRACIANO ZARA, et al.,             :
                                       :
              Defendants.              :
_____:

**APPEARANCES:**

WILLIAM SEYMOUR JONES, Plaintiff, <u>Pro Se</u>
Federal Detention Center
#53578066
P.O. Box 562
Philadelphia, PA 19105

STEPHEN E. SIEGRIST, MURPHY & O'CONNOR, LLP
Commerce Center
1810 Chapel Avenue West
Suite 130
Cherry Hill, NJ 08002-4607
Attorney for Defendants Zara, Annissette, Wynn, Grady, Sally,
Sloan and Correctional Health Services, Inc.

DONALD WAYNE MOORE
Assistant County Counsel
Administration Bldg. Annex
567 Pavonia Avenue
Jersey City, NJ 07306, and
MICHAEL L. DERMODY
Office of the Hudson County Counsel
567 Pavonia Avenue
Jersey City, NJ 07306
Attorneys for Defendants Green and Salley

THOMAS A. WESTER, McDERMOTT & McGEE
75 Main Street
P.O. BOX 192
Millburn, NJ 07041
Attorney for Defendant Contract Pharmacy Services

ANDREW K. WOREK and JOSEPH GOLDBERG
WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY
2000 Market Street
13th Floor
Philadelphia, PA 19103
Attorneys for Defendants
Bio-Reference Laboratories and Bader Maria-Redemont Cobra

**GARRETT E. BROWN, Jr., Chief Judge**

This matter is before the Court on Defendants' motions for summary judgment to dismiss Plaintiff's complaint (hereinafter "Complaint").

The Complaint was filed on September 19, 2003,[1] see Docket Entry No. 1, and was amended on February 17, 2004, see Docket Entry No. 9,[2] and the motions to dismiss were filed between August 31, 2005, and September 2, 2005. See Docket Entries No. 163-66. On September 15, 2005, and October 4, 2005, Plaintiff filed his statements in opposition to the motions, see Docket Entries No. 174-76 and 183, and on September 22 and 23, 2005, Defendants filed their replies in support of their motions for summary judgment. See Docket Entries No. 178-80. Following these submissions, on September 28, 2005, Plaintiff filed a narrative statement and a

---

[1]

Due to the common questions of law and fact between Jones v. Zara, 03-3947, and Jones v. Green, 02-6029, these cases were consolidated into the instant action. See Docket Entries No. 4 and 5.

[2]

The amended complaint named Dr. Wynn as a Defendant. Another amended complaint was filed on August 25, 2004, and Plaintiff's Third amended complaint was filed on March 10, 2005. See Docket Entries No. 9, 61 and 94.

2

letter requesting dismissal of one of Defendants and dismissal of all Plaintiff's state law tort claims. _See_ Docket Entries No. 181-82. On November 7, 2005, and November 18, 2005, Plaintiff stipulated dismissal of certain other Defendants, _see_ Docket Entries No. 189 and 194, and the District Court entered orders allowing the aforesaid dismissals on November 6 and 18, 2005.[3] _See_ Docket Entries No. 185, 195. This action was transferred to the undersigned on September 14, 2006. Finally, during the course of this litigation, Plaintiff submitted numerous applications for appointment of pro bono counsel, all of which were denied, except for the one filed on September 8, 2006, which is pending as of the date of this Opinion and accompanying Order.[4]

In consideration of Plaintiff's renewed attempt to obtain pro bono counsel, the Court notes that Plaintiff has again failed to satisfy the factors required for appointment of counsel as articulated in _Tabron v. Grace_, 6 F.3d 147, 155-157 (3d Cir. 1993). Specifically, _Tabron_ requires that if a court determines that a claim has "arguable merit in fact and law", said court must

---

[3]

As of the date of this Opinion and accompanying Order, the following parties are no longer named as Defendants in this action: the Bio-Reference Laboratories, Inc., the Correctional Health Services, Dr. Grady, Dr. Bader Maria-Pedemonte Cobra, and Catherine Sloan. _See_ Docket Entry No. 195.

[4]

This Court notes that there have been previous cross-claims for indemnification lodged between Defendants. As summary judgment shall be granted, the cross-claims will be dismissed as moot.

consider additional factors, which include: (1) the plaintiff's ability to present his or her case; (2) the complexity of the legal issues presented; (3) the degree to which factual investigation is required and the ability of the plaintiff to pursue such investigation; (4) whether credibility determinations will play a significant role in the resolution of his claims; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can afford counsel on his or her own behalf. <u>Tabron</u>, 6 F.3d at 155-157.

In the case at bar, Plaintiff clearly demonstrates that he sufficiently understands the legal and factual issues in this case as well as the ability to present his case. Further, the Court finds that the issues presented are not unusually complex, nor would require extensive factual investigation to adequately litigate. The Court therefore denies Plaintiff's request for the appointment of pro bono counsel.

In consideration of Defendants' motions for summary judgment, this Court has reviewed relevant documentation, and for the following reasons, summary judgment will be granted.

**BACKGROUND**

In his initial Complaint, Plaintiff alleged denial of equal protection in violation of the Fourteenth Amendment and denial of medical care in violation of the Eighth Amendment. <u>See</u> <u>generally</u>,

Compl. While this Court dismissed Plaintiff's equal protection claim for failure to state a claim upon which relief may be granted, see Docket Entries No. 4 and 5, the Court allowed Plaintiff's Eighth Amendment claim to procede, see id., summarizing the facts stated in Plaintiff's Complaint as follows:

> [Plaintiff] alleges that [Defendants] denied Plaintiff's [Glyburide] prescription for treatment of his diabetes [from] January 2003 through April 2003, without regard to Plaintiff's . . . need for medication. [Prior to his arrival to Defendants' facility (hereinafter "Facility"), Plaintiff] had been given a prescription for certain medication and for continuing blood tests [and] was issued his prescribed medication upon arrival [to the Facility] in December 2002. However, [Defendants] later denied the prescribed medication, without ordering any blood tests, for the months January 2003 through April 2003. . . . [Plaintiff] claims that [Defendants'] denial of prescribed diabetes medication constitutes deliberate indifference and violates his constitutional rights under the Eighth . . . Amendment[,] [see] Compl., ¶¶ 12-16.

See Docket Entry No. 4, at 2-3.

Liberally construing the allegations in Plaintiff's Complaint, the Court (1) found that Plaintiff was asserting, inter alia, violations of the Eighth Amendment; (2) noted that Plaintiff did not allege any injuries or medical complications resulting from the alleged discontinuation of Glyburide;[5] and (3) concluded that,

> [if Defendants, in fact,] neglect[ed] Plaintiff's need for prescribed medications [or] caused [undue] delay in [Plaintiff's] refills . . . , [Plaintiff] may be able to

---

[5] Plaintiff's later submission alleged that Plaintiff experiences vision problems and tingling of his toes. However, Plaintiff's extensive medical charts and records do not indicate a single complaint by Plaintiff about Plaintiff's vision or the tingling of Plaintiff's toes.

demonstrate a serious medical need [and] also may be able to show deliberate indifference by Defendants [since] there are no allegations that Defendant[s] . . . prescribed an alternative medication or treatment for Plaintiff in place of the originally prescribed medication[, and since Plaintiff] alleges that . . . Defendant[s] denied him prescribed medication for no apparent reason or without medical justification.

See id. at 11-16.

Defendants moved for summary judgement alleging that the affidavits by doctors treating Plaintiff during the period at issue

show that Plaintiff . . . received on-going medical care . . . for both the diabetes and [other ailments,] and that there was no deliberate indifference to the medical needs of [Plaintiff, since changes in treatment of Plaintiff's diabetes resulted from exercises of medical judgement.]

Docket Entry No. 161, Ex. 2, at 5-8.

Responding to Defendants' motions for summary judgement, Plaintiff asserted that Defendants' motions should not be granted since there are material facts in dispute. See Docket Entries No. 171, 173, 175.


## STANDARD FOR A MOTION FOR SUMMARY JUDGEMENT

_____A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir.

1988), <u>cert. denied</u>, 490 U.S. 1098 (1989); <u>Hersh v. Allen Prods. Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995); <u>Hancock Indus. v. Schaeffer</u>, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires

submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed'n, 497 U.S.

871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); <u>Anderson</u>, 477 U.S. at 249; <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992), <u>cert.</u> <u>denied</u>, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" <u>Id.</u> at 193 (citations omitted). However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." <u>Id.</u> (citation omitted).

**DISCUSSION**

**A.  Eighth Amendment Medical Care Claims**

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment.   The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Rhodes, 452 U.S. at 346, 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See id. at 106.  To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).  The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment.  See id. at 347. For example, pursuant to Estelle, if "unnecessary and wanton infliction of pain" results as a consequence of denial or delay in

the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment. See Estelle, 429 U.S. at 105. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. See, e.g., Archer v. Dutcher, 733 F.2d 14, 16 (1984) (pregnant inmate who miscarried stated cognizable claim where she alleged that defendants intentionally delayed emergency medical aid in order to make her suffer). Hence, a medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect

arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates. <u>See Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 346-47 (3d Cir. 1987), <u>cert. denied</u> 486 U.S. 1006 (1998).

However, inconsistencies or differences in medical diagnoses, refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, or to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures cannot amount to cruel and unusual punishment. <u>See</u> <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment or treatment do not state Eighth Amendment claims); <u>see</u> <u>also</u> <u>Alsina-Ortiz v. Laboy</u>, 400 F.3d 77 (1st Cir. 2005)(a doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment); <u>Smith v. Sator</u>, 102 Fed. Appx. 907 (6th Cir. 2004) (where a prisoner alleged that defendants did not provide various specialized medical tests that the prisoner found to be necessary based on his reading of medical literature, the court held that the complaint was frivolous because refusal to provide specialized tests amounted to nothing more than a difference of opinion regarding the medical diagnosis and treatment and did not rise to the level of an Eighth Amendment violation); <u>Lopez v. Kruegar</u>, 1990

U.S. Dist. LEXIS 6808 (E.D. Pa. June 4, 1990) (where plaintiff stated that he was receiving medication but felt that additional medical tests should be performed, his allegations were directed at the wisdom or quality of treatment and did not state a claim); Coleman v. Crisp, 444 F. Supp. 31 (W.D. Okla. 1977) (difference of opinion between plaintiff and doctors concerning availability of treatment and medication did not establish violation of constitutional right or sustain claim). Similarly, Plaintiff's interest in preventive measures does not state a constitutional claim. See Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be held deliberately indifferent to an existing serious medical condition, not a speculative future medical injury).

**B.  Treatment of Diabetes**

While "[d]iabetes is commonly known to be a serious condition that requires medical care and treatment," see Docket Entry No. 4, at 15, for the purposes of a § 1983 claim, diabetes is not different from any other serious medical need: a sub-optimal treatment of an inmate's diabetes treatment cannot amount to a violation of constitutional proportions, even if the quality of the treatment gives rise to an action of medical malpractice under the state law. See Estelle, 429 U.S. 97; Durmer, 991 F.2d 64; White v. Napoleon, 897 F.2d 103; accord McClung v. Camp County, 627 F. Supp.

14

528 (E.D. Tex. 1986) (evidence that diabetic inmate was given medication 3 times per day instead of prescribed 4 daily doses was insufficient to constitute constitutional violation in absence of demonstrated harm). Hence, any difference in opinion with respect to a diabetes treatment between the doctor and the inmate cannot serve as basis for a constitutional claim. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110; Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984); Jefferson v. Douglas, 493 F. Supp. 13 (W.D. Okla. 1979) (inmate's difference of opinion with prison medical staff as to proper diet he was to receive for his diabetes did not constitute cruel and unusual punishment to sustain claim under 42 U.S.C. § 1983). Therefore, for the purposes of the motion at bar, this Court's inquiry concentrates on the question of whether the evidence currently available verifies that Defendants' actions were (1) reasonably prompt; and (2) resulted from a medical judgement.


**C.    Treatment of Plaintiff's Diabetes by Dr. Wynn**

Dr. Wynn provided diabetes-related medical care to Plaintiff during the period at issue. See Docket Entry No. 161, Ex. G. Specifically, Dr. Wynn avers that he

> rendered medical care to [Plaintiff on] December 13, 2002[,] for the initial physical exam; [then on] January 29, 2003[,] for a follow-up regarding blood sugar, blood pressure and a feeling of

indigestion; [then on] February 7, 2003[,] for
follow-up for blood sugar and blood pressure; [then
on] February 18, 2003[,] for a sore throat, boils
on the buttocks and abdominal cramping; [then on]
March 10, 2003[,] for a follow-up [examination;
then on] April 7, 2003[,] for boils on the buttocks
and constipation; [then on] April 21, 2003 for a
follow-up [examination; then on] April 29, 2003[,]
for medication renewal and a follow-up for blood
pressure.

Docket Entry 161 at 4, accord Exs. E-5 to E-11. With respect to

Plaintiff's diabetes, Dr. Wynn avers that "Glyburide was

discontinued on January 29, 2003, [ and Dr. Wynn's decision was]

based upon [Plaintiff's] medical presentation and the blood sugar

levels obtained from the finger sticks" tests conducted in December

of 2003. Id. Dr. Wynn further avers that,

> [while Dr. Wynn decided] to discontinue
> [Plaintiff's] prescription for Glyburide[, o]ther
> medications were still prescribed. [Dr. Wynn's
> decision] to discontinue [Plaintiff's] Glyburide
> [treatment] was based upon glucose finger stick
> testing, which was conducted from December 13,
> 2002[,] through January 29, 2003, as well as
> [Plaintiff's] signs and symptoms. Once Glyburide
> was discontinued, [Plaintiff] was monitored on a
> regular basis for his blood glucose by finger
> sticks. [Plaintiff's withdrawal from Glyburide
> produced] no side affects and no outward symptoms
> from diabetes. . . . A routine complete blood
> test [of Plaintiff] was obtained on April 7, 2003[,
> and the results of that test were] consistent with
> the January 29, 2003, decision to discontinue the
> Glyburide medication. During the [period at issue,
> Dr. Wynn had] reasonable degree of medical
> certainty and probability [that the] Glyburide
> [treatment] was not medically necessary [for
> Plaintiff] based upon the [Plaintiff's] blood sugar
> finger stick reading and his physical presentation,
> including signs and symptoms.

<u>Id.</u>, Exs. E5 to E6, E22 to E28, E31 to E49, and E54 to E67 (detailing the results of tests and examinations, and stating the relevant dates of medical decisions and the medicine administered to Plaintiff). However, after Plaintiff's food intake was increased, and Plaintiff's blood sugar readings elevated, Dr. Wynn (1) prescribed Plaintiff Glyburide, and (2) continued monitoring Plaintiff's diabetes. <u>See id.</u>, Ex. E-11 to E15.

While Plaintiff might dispute the wisdom of Dr. Wynn's decisions, the above-cited exhibits unambiguously indicate that (1) Plaintiff's diabetes was monitored on on-going basis, and (2) Dr. Wynn's decision to take Plaintiff off Glyburide (same as Dr. Wynn's decision to put Plaintiff back on Glyburide) was a result of medical judgement.[6] Although Plaintiff's submissions in opposition to Defendants' motions for summary judgement asserts that Plaintiff's blood sugar was not duly tested, Plaintiff deposition indicates otherwise, since Plaintiff admitted that, during the period at issue: (1) Plaintiff had medical visits with Dr. Wynn "a number of times," <u>id.</u>, Ex. F, at 17, including the months of January, February and March, <u>id.</u>, Ex. F, at 14-19, and even refused

_____

[6]
The Court notes that: (1) Plaintiff made applications for appointment of medical expert asserting Plaintiff's need to establish that Defendants were aware of Plaintiff's diabetes, <u>see</u> Docket Entry Nos. 8 and 50, (2) such applications were denied without prejudice, <u>see</u> Docket Entry No. 53, and (3) Plaintiff did not renew his application. Defendants, however, do not dispute Plaintiff's diabetic condition, and assert that was the reason why Dr. Wynn monitored Plaintiff's diabetes. <u>See</u> Docket Entry No. 161.

some medical appointments in February and May of 2003, <u>id.</u>, Ex. F, at 21; and (2) Plaintiff had his blood sugar checked by nurses quite often.[7] <u>Id.</u>, Ex. F, at 37 and 53.

Therefore, this Court is satisfied that the material fact of Plaintiff's blood sugar level being duly monitored is not in dispute, same as the fact that Dr. Wynn's decision with respect to taking Plaintiff off Glyburide and then putting Plaintiff back on the medication was a result of Dr. Wynn's medical judgement. The undisputed material facts indicate that Dr. Wynn was not deliberately indifferent to Plaintiff's diabetic condition. <u>See</u> <u>White</u>, 897 F.2d 103; <u>Alsina-Ortiz</u>, 400 F.3d 77; <u>Smith</u>, 102 Fed. Appx. 907; <u>Lopez</u>, 1990 U.S. Dist. LEXIS 6808; <u>Coleman</u>, 444 F. Supp. 31. Therefore, Dr. Wynn's motion for summary judgement will be granted.

**D.** **<u>Treatment of Plaintiff's Diabetes by Other Defendants</u>**

Besides Dr. Wynn, the following parties remain named as Defendants in this action: Dr. Zara, Director Green, Dr. Annissette and Ms. Salley, a social worker. <u>See</u> <u>generally</u>, Docket.

---

[7] Defendants submitted extensive documentary evidence from Plaintiff's medical record verifying continuous monitoring of Plaintiff's diabetes. <u>See</u> Docket Entry No. 161, Exs. E5 to E67. While Plaintiff's opposition to Defendants' motions asserts that no testing was done, Plaintiff does not challenge the authenticity of this documentary evidence.

However, while Dr. Zara frequently treated Plaintiff's blood pressure, hypertension and symptoms of common cold, Dr. Zara never observed Plaintiff having any symptoms of uncontrolled diabetes and, thus, never had to address the issue of Plaintiff's diabetes. See id., Exs. E-5 to E-8 and E12 to E15; accord Ex. F, at 16, 20. Although Plaintiff asserts that Dr. Zara "should have" prescribed Plaintiff Glyburide, Plaintiff's medical opinion, same as Plaintiff's disappointment with Dr. Zara's medical observations and/or conclusions, does not qualify as a material fact suggesting that Dr. Zara was deliberately indifferent to Plaintiff's medical needs. See White, 897 F.2d 103 (mere disagreements over medical judgment or treatment do not state Eighth Amendment claims). Since Plaintiff failed to set forth "specific facts showing that there is a genuine issue for trial" with respect to Dr. Zara's medical decisions, Celotex, 477 U.S. at 324, Dr. Zara's motion for summary judgement will be granted.

Similarly, the motions of Director Green and Ms. Salley will be granted, since neither Director Green nor Ms. Salley had any connection to the treatment of Plaintiff's diabetes. Plaintiff's deposition indicates that: (1) Plaintiff "named Director Green as a Defendant [because] the grievance forms" had Director Green's name pre-printed, see Docket Entry No. 165, Ex. A, at 94-95; and (2) Ms. Salley's connection to the issue of Plaintiff's diabetes was limited to a single occurrence when, responding to Plaintiff's

19

comment that Plaintiff wished to be put back on Glyburide, Ms. Salley recommended Plaintiff to contact Dr. Annissette.[8] See id., Ex. A, at 95.

These facts do not indicate a material issue in dispute. In order to prevail on his claim against Director Green, Plaintiff has to show that Director Green was deliberately indifferent to a substantial risk of harm to the Plaintiff. See Farmer v. Brennan, 511 U.S. 825, 847 (1994). An individual jail official may be found liable under the deliberate indifference standard only if the official knows of the substandard conditions and yet does not take reasonable measures to abate the risk of harm. See Farmer, 511 U.S. at 847; Nami v. Fauver, 82 F.3d 63, 67-68 (3d Cir. 1996). Under the deliberate indifference standard, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Knowledge of a supervisor or policymaker may be shown where the official has actual notice of the risk, Nami, 82 F.3d at 67-8, or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information

_____

[8]

It appears that Ms. Salley, responding to Plaintiff's statement that Plaintiff wished to be put back on Glyburide, took Plaintiff to Dr. Annissette's office, since Plaintiff, being an inmate, could not have access to Dr. Annissette's Office without first submitting a request form. See Docket Entry No. 161, Ex. K.

concerning the risk and thus must have known about it." <u>Farmer</u>, 511 U.S. at 842. Since the doctors at the Facility continuously found that Plaintiff's diabetes was under control and Plaintiff's health was not at risk, there cannot be any dispute with regard to either Director Green's lack of notice of risk to Plaintiff's health or Director Green's lack of deliberate indifference to the matter. Having no material facts in dispute with respect to Director Green's lack of culpability, this Court will grant director Green's motion for summary judgement.

Analogously, Plaintiff's claims against Ms. Salley fail to assert any the disputed material fact with respect to Ms. Salley's lack of personal involvement in the treatment of Plaintiff's diabetes. Personal involvement by a defendant is an indispensable element of a valid legal claim; such personal involvement may exist only where the named defendant violated the plaintiff's rights either by executing the acts at issue himself or herself, or by directing others to violate the plaintiff's rights (or by tolerating past or ongoing misbehavior of subordinates while having both supervisory power and knowledge of these constitutional violations). <u>See</u> <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995); <u>Sample</u>, 885 F.2d at 1110; <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Conversely, where no personal involvement by the defendant is asserted, the plaintiff's claim

against that defendant is subject to dismissal. <u>Rode</u>, 845 F.2d at 1207.

Since Plaintiff does not dispute that Ms. Salley's involvement in the treatment of Plaintiff's diabetes was limited to a recommendation to talk to Dr. Annissette, and such recommendation cannot amount to an act of deliberate indifference, <u>see</u> <u>Rouse</u>, 182 F.3d at 197, Defendant Salley's motion for summary judgement will be granted.

Finally, Plaintiff's claims against Dr. Annissette are based on the fact that (1) Dr. Annissette was the medical director of the Facility, and (2) after seeing Plaintiff on May 21, 2003, Dr. Annissette did not prescribe Glyburide to Plaintiff. However, as discussed <u>supra</u>, Plaintiff's claims against Dr. Annissette cannot be based solely on Dr. Annissette's supervisory capacity. <u>See</u> this Opinion, at 19.

Moreover, it is undisputed that, following meeting with Plaintiff, Dr. Annissette: (1) increased Plaintiff's food intake, and (2) contacted Dr. Wynn who saw Plaintiff eight days later, on May 29, 2003, and put Plaintiff back on Glyburide. <u>See</u> Docket Entries No. 161, Ex. K, and 161, Exs. E-11 to E-15. Since Plaintiff's demand for Glyburide was satisfied after Plaintiff's meeting with Dr. Annissette, there is no dispute that Dr. Annissette was not indifferent to Plaintiff's medical needs.

Therefore, Dr. Annissette's motion for summary judgement will be granted.

After carefully reviewing all submissions and evidence provided by the parties, this Court finds no material facts in dispute and will grant Defendants' motions for summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment will be granted.  Plaintiff's motion for appointment of pro bono counsel will be denied as moot.  Defendants' cross-claims for indemnification will be denied as moot.  Having no issue remaining unresolved, this Court will direct the Clerk to close the file in this matter.

An appropriate Order accompanies this Opinion.

                                                 s/Garrett E. Brown, Jr.
                                                **GARRETT E. BROWN, JR., Chief Judge**
                                                **United States District Court**

Dated: September 26, 2006